IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23-03113-01-CR-S-BCW |
| | ) | |
| GARY EUGENE EDWARDS, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT & RECOMMENDATIONS**

Before the Court is Defendant's Motion to Dismiss the Indictment Due to the Government's Failure to Preserve Exculpatory Evidence. (Doc. 66.) On or about October 8, 2023, Defendant "was apprehended at the Springfield-Branson National Airport after allegedly driving his vehicle, a truck, into and through restricted" areas of the Airport. *Id*. at 2. He is charged by Indictment with damaging and interfering with the operation of an air navigation facility by force and violence in violation of 18 U.S.C. § 32(a)(3). Defendant now moves to dismiss the Indictment, alleging the Government "failed to preserve the vehicle [he] was driving at the time of the events that give rise to the pending Indictment and, in so failing, failed to preserve evidence possessing apparent exculpatory value in violation of [his] rights" to due process and fair trial under the Fifth and Sixth Amendments to the United States Constitution. *Id*. at 1. The Government filed Suggestions in Opposition to the Motion. (Doc. 69.)

On April 1, 2025, the undersigned scheduled an evidentiary hearing on the Motion, to be held on April 24, 2025. On April 24, 2025, the undersigned conducted the evidentiary hearing. The Government was represented by Assistant U.S. Attorney Jim Kelleher, and Defendant appeared in person with defense counsel, Ben Stringer. Isaac McPheeters testified as a witness for

the Government. During the hearing, Defendant requested and was granted leave to file supplemental briefing on the matter. (Doc. 73 at 11-13.) On May 6, 2025, Defendant filed Supplemental Suggestions in Support of the Motion, wherein he requested an additional hearing on the matter. (Doc. 74.) On May 14, 2025, the Government filed Suggestions in Opposition to Defendant's Supplemental Suggestions in Support. (Doc. 76.) Finally, on May 28, 2025, Defendant filed Reply Suggestions in Support of the Motion, which concluded the briefing on the matter. (Doc. 77.) This case has been referred to the undersigned to hear and process all pretrial motions to dismiss the indictment. Upon review, it is recommended that the Motion be **DENIED**.

## I. Findings[1]

Isaac McPheeters is a Special Agent with the Federal Bureau of Investigation. Tr. 14. On October 8, 2023, Agent McPheeters received information that Defendant had been taken into custody at the Springfield-Branson National Airport. Tr. 14. Specifically, Defendant had driven a truck into a gate, backed up, hit the gate again with the truck and rammed the truck through the gate, then drove onto and around the tarmac, and finally drove to the main entrance of the Airport, where he crashed the truck into some pillars on the sidewalk. Tr. 14-15, 21, 27. Defendant then ran into the Airport, where he was arrested by law enforcement officials. Tr. 15.

At the time of the incident, the truck, a 1997 Ford F-150, appeared to be under human control and operating normally, with no apparent defects that would have caused Agent McPheeters to believe the truck had any evidentiary value. Tr. 16-17, 27. Although Defendant was acting erratically, he did not appear to be under the influence of any kind of substance. Tr. 23. No bottles or containers were found in the truck that would indicate that Defendant may have

---

[1] The facts set forth are taken from the testimony adduced and evidence presented at the hearing. See Transcript ("Tr.") (doc. 73) and Defendant's Ex. 1, the Affidavit of George Beltz (doc. 66-1).

been under the influence of something he had ingested, intentionally or unintentionally. Tr. 24. During the investigation, Agent McPheeters did not learn any information that would indicate that there was anything of value inside the truck that required further investigation, nor did he believe there was any evidence of crimes inside the truck. Tr. 25.

Following the incident, the truck was towed from the sidewalk in front of the Airport by Henry's Towing. Tr. 15. Sometime thereafter, Defendant's colleague George Beltz contacted Henry's Towing to retrieve the truck but was told there was a hold on the truck. (Tr. 3-4; doc. 66-1.) Approximately one month later, Mr. Beltz contacted Henry's Towing again and was told the hold had been lifted but the truck had been destroyed. *Id*. Then, in April 2024, AUSA Kelleher was contacted by Defendant's prior counsel about the status of the truck, as Defendant was upset that the truck had been destroyed. Tr. 29-30. On April 9, 2024, AUSA Kelleher contacted Agent McPheeters, who contacted Henry's Towing. Tr. 15. Agent McPheeters was advised by Henry's Towing that they no longer had possession of the truck, which may have been destroyed or sold at auction. Tr. 15. Prior to this, Agent McPheeters received no inquiries regarding the truck from anyone, and he was not aware of any inquiries made by Defendant, a representative of Defendant, or an attorney for Defendant to any law enforcement officials regarding the truck. Tr. 16.

**II.     Conclusions**

Defendant argues that "by failing to secure and preserve the truck in this case, the government allowed the destruction of evidence possessing apparent exculpatory value in violation of Defendant's due process rights … requiring a dismissal of the Indictment." (Doc. 66 at 2-3.) In support, Defendant cites *California v. Trombetta*, 467 U.S. 479 (1984), *Arizona v. Youngblood*, 488 U.S. 51 (1988) and *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 66 at 1; doc. 74 at 1.)

3

Under the Due Process Clause of the Fourteenth Amendment, "a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *Trombetta*, 467 U.S. at 485 (citing *Brady*, 373 U.S at 87). However, the Due Process Clause does not impose on the government "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58. Rather, the government has a duty to preserve evidence "that might be expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488. Under *Trombetta*, a defendant's due process rights are violated if the evidence possessed an exculpatory value that was: 1) apparent before the evidence was destroyed; and 2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Id*. at 489.

If the evidence's exculpatory value was not apparent prior to destruction, then "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58. Potentially useful evidence is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id*. Further, "the presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed, because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015). "The burden of demonstrating bad faith on the part

of the government resides with the defendant." *United States v. Webster*, 625 F.3d 439, 447 (8th Cir. 2010).

### a. Apparent exculpatory value under *Trombetta*

Defendant argues the truck's "evidentiary value was evident and apparent." (Doc. 66 at 3.) A defendant's due process rights are violated if the evidence possessed an exculpatory value that was: 1) apparent before the evidence was destroyed; and 2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Trombetta*, 467 U.S. at 489. Here, the evidence shows that the truck did not possess an exculpatory value that was apparent before its destruction.

#### 1. Carbon monoxide/intoxicants

Defendant claims, "the truck is significantly aged and deteriorated" and suggests that "carbon monoxide leaking through the body of the truck would risk the occupant to exposure[, which] is known to affect a person's mental condition and cognitive function." *Id*. He "further believes the truck could have contained other evidence he was impaired through an intoxicant in the vehicle, intentionally or inadvertently put there, which would have affected his perception, judgment, and behavior." *Id*. at 4. According to Defendant, had the truck been preserved, he could have shown "that he was effectively impaired by mind and behavior-altering chemicals, effectively discharging his responsibility for any of the alleged events." *Id*.

But, apart from the age of the truck, a 1997 Ford F-150, there is no evidence to support Defendant's conclusory argument that its exculpatory value was apparent due to its condition creating the possibility of exposure to carbon monoxide. As Mr. Stringer stated at the hearing, "I do not have actual evidence that the vehicle did emit any particular form of noxious gas" and "our argument here is speculative." Tr. 7. Mr. Stringer also stated Defendant had no "medical or

5

scientific evidence *per se* of the defendant's state of mind at the time of the alleged offense." Tr. 13. In fact, the truck had no apparent defects, and Defendant did not appear to be under the influence of any kind of substance at the time of the incident. The age of the truck alone does not support Defendant's speculation regarding carbon monoxide, and as a result, the undersigned concludes that this argument fails.

Defendant also contends that the exculpatory value of the truck was apparent because he believes it could have contained other evidence that he was impaired through an intoxicant in the vehicle, intentionally or inadvertently put there, which would have affected his perception, judgment, and behavior. Again, however, there is no support for this claim, as nothing was found in the truck that would indicate the presence of a chemical agent, nor did Defendant appear to be under the influence of any kind of substance at the time of the incident. Accordingly, this argument is mere speculation, based entirely on Defendant's belief that there could have been an intoxicant in the truck, and fails to show that the exculpatory value of the truck was apparent.

### 2. Vehicular malfunction

Lastly, during and after the April 24, 2025, evidentiary hearing, Defendant raised an additional argument, claiming the exculpatory value of the truck was apparent because he could have shown that "the accelerator and/or brakes were malfunctioning and causing [him] to be unable to control the vehicle." (Doc. 74 at 3.) But Defendant again provides no evidence in support, as Mr. Stringer stated at the hearing, "I don't have any evidence that there was something wrong with the accelerator or the brake specifically." Tr. 26. Rather, during the incident, the truck appeared to be under human control and operating normally, with no apparent defects. Specifically, the truck was driven forward into a gate, then backed up and then driven forward again until it broke through the gate. The truck was then driven onto and around the tarmac and to the main entrance

6

of the Airport, where it ultimately crashed into some pillars on the sidewalk. Considering these uncontroverted facts, Defendant's baseless speculation that the truck's accelerator and/or brakes could have been malfunctioning is unreasonable. Therefore, Defendant's argument that the truck's exculpatory value was apparent because it may have been malfunctioning lacks merit.

### b. Bad faith under *Youngblood*

Because the truck did not possess apparent exculpatory value, it was at most "potentially useful" to Defendant. As a result, Defendant must prove that the Government acted in bad faith in failing to preserve the truck. *Youngblood*, 488 U.S. at 58. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed, because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *Zaragoza-Moreira*, 780 F.3d at 977.

According to Defendant, "the Government acted in bad faith when they failed to preserve the Defendant's vehicle as the potential usefulness of such evidence would and should have been obvious." (Doc. 66 at 4.) He purports that "the condition and character of the truck – and the damage to the body of the vehicle – were obvious [and] the truck was how the alleged offense was committed and, as such, was always a central piece of evidence [he] should have had access to." *Id*. However, as set forth above, Defendant presented no evidence regarding the condition and character of the truck or any damage to its body. The age of the truck alone is insufficient to support Defendant's contentions. And, contrary to Defendant's claims, the facts show that the truck had no apparent defects and appeared to be operating normally during the incident.

Additionally, the evidence presented at the hearing shows the Government had no knowledge of the potential usefulness of the evidence prior to its destruction. After being

7

of the Airport, where it ultimately crashed into some pillars on the sidewalk. Considering these uncontroverted facts, Defendant's baseless speculation that the truck's accelerator and/or brakes could have been malfunctioning is unreasonable. Therefore, Defendant's argument that the truck's exculpatory value was apparent because it may have been malfunctioning lacks merit.

### b. Bad faith under *Youngblood*

Because the truck did not possess apparent exculpatory value, it was at most "potentially useful" to Defendant. As a result, Defendant must prove that the Government acted in bad faith in failing to preserve the truck. *Youngblood*, 488 U.S. at 58. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed, because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *Zaragoza-Moreira*, 780 F.3d at 977.

According to Defendant, "the Government acted in bad faith when they failed to preserve the Defendant's vehicle as the potential usefulness of such evidence would and should have been obvious." (Doc. 66 at 4.) He purports that "the condition and character of the truck – and the damage to the body of the vehicle – were obvious [and] the truck was how the alleged offense was committed and, as such, was always a central piece of evidence [he] should have had access to." *Id*. However, as set forth above, Defendant presented no evidence regarding the condition and character of the truck or any damage to its body. The age of the truck alone is insufficient to support Defendant's contentions. And, contrary to Defendant's claims, the facts show that the truck had no apparent defects and appeared to be operating normally during the incident.

Additionally, the evidence presented at the hearing shows the Government had no knowledge of the potential usefulness of the evidence prior to its destruction. After being

7

abandoned by Defendant on the sidewalk in front of the Airport's main entrance, the truck was towed away by Henry's Towing on or about October 8, 2023. Approximately six months later, Defendant's prior counsel contacted AUSA Kelleher regarding the truck, not in reference to its evidentiary value, but because Defendant was upset that his property had been destroyed. AUSA Kelleher then contacted Agent McPheeters, who called Henry's Towing. Agent McPheeters learned that Henry's Towing no longer possessed the truck, as it had been destroyed or sold at auction. Prior to this, Agent McPheeters received no inquiries about the truck from anyone, and he was not aware of any inquiries made by Defendant, a representative of Defendant, or an attorney for Defendant to any law enforcement officials regarding the truck.

Also, as previously discussed, Agent McPheeters' investigation showed that at the time of the incident, the truck appeared to be under human control and operating normally, with no apparent defects that would have caused him to believe the truck had any evidentiary value. Although Defendant was acting erratically, he did not appear to be under the influence of any kind of substance. No bottles or containers were found in the truck that would indicate that Defendant may have been under the influence of something he had ingested, intentionally or unintentionally. And in the approximately six-month period after the incident, Agent McPheeters did not learn of any information that would indicate that there was anything of value inside the truck that required further investigation, nor did he believe there was any evidence of crimes inside the truck.

As noted, Mr. Stringer stated Defendant's arguments as to the possibility of noxious gas or a chemical agent in the truck are "speculative," which is insufficient to establish bad faith. See *Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003) (holding that bad faith is not established when the exculpatory value is entirely speculative; rather, to prove bad faith there must be "specific, nonconclusory facts showing … a conscious effort to suppress exculpatory

8

evidence.") Under these circumstances, the undersigned cannot conclude that the truck was destroyed in bad faith, as the evidence shows the Government had no knowledge that the truck was potentially useful evidence. As a result, Defendant has failed to meet his burden of showing any bad faith on the part of the Government, and as to this basis the Motion should be denied.

    **c.**    **Additional hearing**

Lastly, Defendant requests an additional hearing to present evidence on the issue of whether the Government placed a hold on the truck and played a role in its destruction. (Docs. 74, 77.) However, "the mere fact that the government controlled the evidence and failed to preserve it is by itself insufficient to establish bad faith." *United States v. Richard*, 969 F.2d 849, 853-54 (10th Cir. 1992) (citing *United States v. Zambrana*, 841 F.2d 1320, 1343 (7th Cir. 1988)). Here, the undersigned has already concluded that, regardless of the Government's role in the destruction of the truck, there is no evidence of any bad faith on its part. Therefore, an additional hearing to determine what role, if any, the Government played in the destruction of the truck would serve no purpose, and the undersigned declines to set such a hearing.

**III.**    **Recommendation**

Based on the foregoing, the undersigned concludes that the truck did not possess any apparent exculpatory value prior to its destruction. Furthermore, if the truck was potentially useful evidence, Defendant has failed to show any bad faith on the part of the Government leading to its destruction. As a result, Defendant's due process rights were not violated. It is therefore **RECOMMENDED** that Defendant's Motion to Dismiss the Indictment Due to the Government's Failure to Preserve Exculpatory Evidence be **DENIED**.

    /s/ *David P. Rush*  
    DAVID P. RUSH  
    UNITED STATES MAGISTRATE JUDGE

DATE: July 17, 2025